FT. WORTH & R. G. RY. CO. v. JONES.
(No. 9070.)

(Court of Civil Appeals of Texas. Ft. Worth. March 29, 1919. On Motion for Rehearing, May 10, 1919.)

1. CARRIERS ⬤⟿219(1)—LIVE STOCK—BILL OF LADING — DESTINATION BEYOND ISSUING CARRIER'S LINE—DUTY OF CARRIERS.

Bill of lading, showing destination of live stock beyond issuing carrier's own line and name of consignee under Vernon's Sayles' Ann. Civ. St. 1914, art. 716, would not of itself have bound such carrier to transport shipment beyond its own lines.

2. CARRIERS ⬤⟿228(3) — LIVE STOCK SHIPMENT—ACTION FOR DELAY—EVIDENCE.

In action against initial carrier for negligent delay in delivery of live stock shipment, where there was no allegation of negligence by connecting carrier, evidence tending to show that connecting carrier's failure to deliver shipment sooner was due to congestion of traffic, and not negligence on part of such carrier, was material to show delay by initial carrier, if any, was no proximate cause of loss, and to controvert plaintiff's contention of negligent delay by connecting carrier after receiving shipment from initial carrier.

3. EVIDENCE ⬤⟿320—EVIDENCE FOUNDED ON HEARSAY—RECORDS.

In action for delay in delivery of cattle shipment, testimony predicated upon correctness of records of sales of the cattle kept by person making sales and records of weight by person doing weighing was not objectionable as hearsay.

4. APPEAL AND ERROR ⬤⟿1050(1)—REVIEW—HARMLESS ERROR.

Admission of testimony as to telephone conversation, by witness to whom conversation had been related by one of the parties thereto, was not prejudicial to plaintiff, where only fact

testified to by such witness, not testified to by the party who had related conversation to him, was a fact alleged by petition, and as to that fact party stated he could not remember.

**5. CARRIERS ⟨Key⟩230(1)—LIVE STOCK—DELAY —CONTRACT OF SHIPMENT—SUBMISSION TO JURY.**

In action for delay in delivery of live stock shipment, where there was no testimony of any contract by the carrier to transport the shipment to place of its destination, the court erred in submitting that issue to the jury and authorizing a recovery thereon.

**6. CARRIERS ⟨Key⟩227(3)—LIVE STOCK SHIPMENT—PLEADING—VARIANCE.**

In action against initial carrier for negligent delay in delivery of live stock shipment, where petition did not allege negligence by connecting carrier, but predicated liability on negligence of initial carrier alone, plaintiff could not recover upon proof of connecting carrier's negligence, notwithstanding Vernon's Sayles' Ann. Civ. St. 1914, arts. 731, 732.

**7. CARRIERS ⟨Key⟩228(1) — LIABILITY OF CONNECTING CARRIER—STATUTES.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 732, providing that any connecting carrier of a through shipment may be held liable for negligence of any other connecting line, does not relieve party suing of the burden of alleging and proving the negligence of such other connecting line upon which the cause of action is based.

*On Motion for Rehearing.*

**8. APPEAL AND ERROR ⟨Key⟩966(2) — REVIEW—PRESUMPTIONS.**

Where defendant's motion for continuance for absent witnesses was excepted to on ground that there is no pleading on which to predicate the testimony, that testimony was not material, and that no diligence was shown, and court overruled motion without showing basis of his ruling in his order, court's ruling is available as error, on appeal, notwithstanding inadmissibility of testimony under general denial, since it will be assumed that defendant would have amended pleaded if motion had been overruled on such ground.

**9. EVIDENCE ⟨Key⟩20(2) — JUDICIAL NOTICE—CONNECTING CARRIERS.**

Court will not judicially know that a connecting carrier in handling through shipment acts as the agent and employé of carrier from whom it receives shipment, and not as an independent carrier.

Appeal from Hood County Court; W. L. Dean, Judge.

Action by C. B. Jones against the Ft. Worth & Rio Grande Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Andrews, Streetman, Burns & Logue, of Houston, J. L. Lockett, Jr., of Ft. Worth, and Estes & Estes, of Granbury, for appellant.

C. A. Wright, of Ft. Worth, for appellee.

DUNKLIN, J. The Ft. Worth & Rio Grande Railway Company has appealed from a judgment rendered against it in favor of C. B. Jones for damages to a shipment of 85 head of cattle from the station Boss to the stockyards in North Ft. Worth, the distance covered by such shipment being about 20 miles.

The cattle were consigned to the Cassidy Southwestern Commission Company in North Ft. Worth, but the defendant company's line did not extend to the point of destination, its nearest approach to that point was about 5 miles distant, where it connected with the Ft. Worth Belt Railway.

On September 5, 1917, the cattle were delivered to the defendant company at Boss, and were by it transported to the point of its connection with the Ft. Worth Belt Railway, at which point it delivered the cattle at about 10:10 a. m. of the same day the shipment was started from Boss. The proof showed that if the cattle had been unloaded by the Ft. Worth Belt Line at the stockyards in North Ft. Worth by noon of the same day, such delivery would have been in time for the sale of the cattle on the market of that day, but on account of congestion of traffic the cattle were not delivered to the consignee until late in the afternoon, too late for that day's market, and were held over until the following day, when they were sold.

The proof further showed that a few days prior to the shipment an order was placed with the defendant company for cars in which to load the cattle for about 4 a. m. of the morning of September 5th; and, according to the usual schedule of defendant's train handling such shipments, the cattle would have been loaded and started from Boss about 4:40 of that morning, and would have reached the point of connection with the Ft. Worth Belt Railway about 2 hours later. The proof further showed that from 45 minutes to 1 hour and 15 minutes was the usual time required for the Ft. Worth Belt Railway Company, after receiving such shipment from the defendant company, to transport and deliver it at the stockyards in North Ft. Worth. The cattle did not leave Boss until 8 o'clock on the morning of September 5th.

[1] In plaintiff's petition it was alleged that the defendant contracted and agreed with the plaintiff to transport the cattle to North Ft. Worth, and that it owned and operated a line of railway extending from Boss to North Ft. Worth, but the testimony introduced was wholly insufficient to support that

allegation. The only proof offered to sustain it was testimony to the effect that cars were ordered for the shipment of plaintiff's cattle on the date they were shipped, and that they were consigned to the Cassidy Southwestern Commission Company in North Ft. Worth. No bill of lading or shipping contract was introduced in evidence. Even if a bill of lading had been issued the statute would have required it to show the destination of the cattle and the name of the consignee. Vernon's Sayles' Tex. Civ. Stat. art. 716. But such a bill of lading would not of itself have bound the defendant to transport the cattle beyond its own line.

It was alleged in plaintiff's petition that the shipment was negligently delayed, and that by reason thereof plaintiff missed the market of September 5th, and on account of such delay the cattle lost weight and the market was lower on the following day, and damages were claimed based upon those facts. But the petition contained no allegation of a negligent delay by the Ft. Worth Belt Railway Company; the entire delay of the shipment to North Ft. Worth and plaintiff's loss resulting therefrom all being charged to the defendant.

[2] Error has been assigned to the action of the court in overruling defendant's motion for a continuance, which was its first application, and was made for the purpose of obtaining the testimony of two witnesses residing in Ft. Worth. Interrogatories had been propounded to those witnesses in time to have procured their depositions, but their depositions were not taken on account of unavoidable contingencies in no manner due to negligence of the defendant company or of the notary in whose hands the interrogatories had been placed. The application for continuance was overruled by the court, and the ground upon which such ruling was made was specifically stated to be because the court was of the opinion that the testimony sought from those witnesses was immaterial to any issue in the case. The application was not overruled for lack of diligence on the part of the defendant to procure the testimony desired, nor do we think that there was any showing of such lack of diligence. The defendant expected to prove by those witnesses that the cause of the delay on the part of the Ft. Worth Belt Railway Company in failing to deliver the cattle in North Ft. Worth sooner than they were delivered was due to a congestion of traffic, and not to any negligence on the part of that company; and other evidence introduced showed that on account of the drought prevailing at that time there was a heavy rush of cattle shipments from the drought-stricken area in West Texas. We are of the opinion that the testimony for which the defendant sought a continuance was material because it tended to controvert the contention by plaintiff that the negligent delay, if any, of the shipment in reaching the connection with the Ft. Worth Belt Line was the proximate cause of the loss complained of, and tended to controvert the further contention that there was a negligent delay of the shipment of cattle by the Ft. Worth Belt Railway Company after it received them from the defendant, and that the court erred in overruling the application.

[3] In order to prove the weight of the cattle when sold and the prices realized therefor, the account sales and other records kept by the consignee were introduced in evidence. The proof showed that the person who weighed the cattle made a record of such weights, and the one who sold the cattle made a record of such sales, and all of those transactions appeared to have been in accordance with the usual method of transacting business in the stockyards at North Ft. Worth, and there was no error in admitting testimony of several witnesses predicated upon the correctness of such records, over the objection urged by the defendant that the same were hearsay. 10 R. C. L. pp. 909, 1171, 1185, 909.

[4] The cars for the shipment in question were ordered by C. M. Calloway for plaintiff by conversation over the telephone with the defendant's train dispatcher. Plaintiff, Jones, was present at the time of the conversation, and immediately upon its conclusion Calloway repeated what the train dispatcher had said. Calloway was introduced as a witness to prove the statements so made by the train dispatcher, and plaintiff was also permitted to testify as to what Calloway told him. The defendant objected to such testimony by the plaintiff on the ground that it was hearsay. Calloway could not remember all that the dispatcher told him, but testified that he correctly reported it to Jones, and Jones detailed the same in his testimony. Even though it should be said that the objection so made was tenable, such error in the ruling was harmless, in view of the fact that the only portion of the conversation which Calloway could not remember was the date for which the cars were ordered, and the defendant's testimony was to the effect that they were ordered for September 5th, which is the date alleged in plaintiff's petition. And that was substantially the entire testimony of both Calloway and the plaintiff with respect to what the train dispatcher said on that occasion.

[5-7] Since there was no testimony of any contract by the defendant to ship the cattle to North Ft. Worth, the court erred in submitting that issue to the jury and authorizing a recovery thereon. And in view of the fact that plaintiff did not allege any negligence on the part of the Ft. Worth Belt Railway Company in handling the cattle after it

had received them from the defendant, but predicated liability upon the negligence of the defendant alone in delaying the shipment, the court should have limited plaintiff's right to a recovery to the issue of negligent delay by the defendant company alone. By article 732, Vernon's Sayles' Tex. Civ. Stats., it is provided, in effect, that any connecting carrier of a through shipment of freight may be held liable for damages resulting from the negligence of any other connecting line, but that article does not relieve the party suing of the burden of alleging and proving the negligence of such other connecting line upon which the cause of action is based.

For the reasons indicated, the judgment is reversed, and the cause is remanded.

### On Motion for Rehearing.

The statement in our original opinion, to the effect that the place of connection of appellant's line of railway with that of the Ft. Worth Belt Railway was 5 miles distant from the stockyards, the place of destination of the cattle, was an error. The distance between those two places was only 1 mile, and this finding is made to correct that error, which, however, could have no material bearing upon the conclusions we reached that the judgment of the trial court was erroneous.

Appellee now insists that under article 731, V. S. Tex. Civ. Stats., the Ft. Worth Belt Railway Company, the connecting carrier, became the agent of the appellant to carry the cattle from the place where it received them to their destination, and by reason of that fact appellant was responsible for the negligence of such agent as well as for its own. By that statute, it is declared that all common carriers, handling a through shipment of freight "on a contract for through carriage, recognized, acquiesced in or acted upon, by such carriers," shall "be deemed and held to be the agents of each other, the agent of the others and all the others the agent of each. * * *" But, clearly, plaintiff could not invoke the benefits of that statute in the present suit, since he did not plead that he shipped his cattle on a contract for through shipment over the line of the appellant and its connecting line, the Ft. Worth Belt Railway Company. On the contrary, his allegations that appellant owned and operated a line from Boss to North Ft. Worth and entered into a contract with him to ship the cattle throughout the entire trip to North Ft. Worth negatived any contract for shipment over two connecting lines, and also negatived the fact that they were shipped over any railway except that of appellant.

It is insisted further that in order for appellant to urge as an excuse for unusual delay in the shipment the fact that there was an unprecedented rush of business which it could not reasonably have anticipated, it was incumbent upon it to plead that fact specially, and that since the only answer filed by it was a general demurrer and a general denial, the testimony, to procure which a continuance was sought, would not have been admissible, and for that reason the trial court did not err in overruling that motion. The following are some of the authorities which are cited to support that contention: V. S. Civ. Stats. art. 6554; 10 Corpus Juris, p. 299; Tex. Cent. Ry. Co. v. Hannay-Frerichs, 130 S. W. 250; Dobie on Bailments and Carriers, 438.

Appellee filed three exceptions to the motion for continuance which were as follows:

"(1) There is no pleading upon which to predicate such testimony continuance is sought for.

"(2) Said testimony of said witnesses is not shown to be material, but, on the contrary, shows affirmatively that such testimony is immaterial.

"(3) No diligence is shown to secure said testimony, and shows wholly a want of diligence."

[8] The order overruling the motion is in general terms, and contains no recitals showing the basis of the ruling, but in the bill of exception to the ruling it is expressly stated that the reason the motion was overruled was that the testimony sought was immaterial. If the first exception to the motion was sufficient to present the contention now urged, and if that exception had been sustained, then it is reasonable to assume that appellant would have filed an amended answer containing such allegations as would have cured that objection. Under such circumstances, it would be unfair to appellant to deny it the right now to complain of the ruling, even though it could be said that the testimony would not have been admissible under its plea of general denial.

[9] Appellee insists further that it is a matter of common knowledge, of which this court should take judicial cognizance, that in handling such shipments the Ft. Worth Belt Railway Company does not act as an independent connecting line, but only as the agent and employé of the railway company from which it receives the shipment, and to whom alone it looks for compensation for its services. This court has held the very reverse of that contention, and the same is overruled. T. & P. Ry. Co. v. Arnett, 41 Tex. Civ. App. 403, 92 S. W. 57. And the decision last cited, together with that of our Supreme Court in Hunter v. So. Pac. Ry. Co., 76 Tex. 195, 13 S. W. 190, supports the conclusion, reached by us on original hearing, to which we adhere, that the evidence introduced was sufficient to show prima facie that appellant entered into a contract with appellee to transport the cattle to their destination at the stockyards in North Ft. Worth.

Accordingly the motion for rehearing is overruled.